IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SUSAN GARREN,                                              No. 3:18-cv-00595-HZ

                Plaintiff,

    v.

AMERICAN MANAGEMENT SERVICES           OPINION & ORDER
NORTHWEST LLC and PHOENIX
COMMERCIAL INVESTMENTS LLC,

                Defendants.

Frank Hamlet Wall
Frank Wall, LLC
4411 NE Tillamook
Portland, OR 97213

     Attorney for Plaintiff

David A. Ernst
Ashlee Marie Aguiar
Timothy M. Cunningham
Davis Wright Tremaine, LLP
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201-5630

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Susan Garren brings six claims for relief against Defendants American Management Services Northwest LLC and Phoenix Commercial Investments LLC. These claims arise under Oregon common law and the Oregon Residential Landlord and Tenant Act (ORLTA), and include: (1) failure to maintain premises in a habitable condition in violation of Oregon Revised Statute § ("O.R.S.") 90.320; (2) wrongfully disposing of abandoned property in violation of O.R.S. 90.425; (3) trespass to chattel; (4) conversion; (5) operating a business with an assumed business name in violation of O.R.S. 648.007; and (6) negligence. Before the Court is Defendants' motion for partial summary judgment. For the reasons that follow, Defendants' motion is granted in part and denied in part.

**BACKGROUND**

In April of 2017, Plaintiff was living in an apartment owned and managed by Defendants. Crown Decl. Ex. 1, ECF 20. After Plaintiff discovered a leak in the apartment, Defendants opened the attic space for inspection. Answer ¶ 6, ECF 8.

When the attic was opened for inspection, Plaintiff suffered an asthma attack and was advised to vacate the apartment. Cunningham Decl. Ex. 3 at 14:11–19, ECF 19. On April 7, 2017—the day after the attic was opened—Plaintiff moved some of her belongings from the apartment. Cunningham Decl. Ex. 6 at 7. On April 13th, Plaintiff informed Defendants that she would quit the tenancy and remove her remaining belongings by April 22nd. Cunningham Decl. Ex. 5. Over the next week and a half, Plaintiff visited the apartment to take pictures, pack, and remove additional items. *Id.* at 3–6. Each time she entered the apartment, she felt ill. *Id.* at 14. On April 21st, Plaintiff told the property manager she would not remove her remaining belongings by the 22nd, as originally promised, because she "was advised not to go in [to the

apartment] nor should anyone else [] be put at risk." Cunningham Decl. Ex. 7. However, she maintained that she was "not abandoning her property." *Id.* She also posted a notice to this effect on the apartment door and emailed a copy to the property manager. Cunningham Decl. Ex. 6 at 9. Plaintiff also asked that Defendants provide her with the results of an air quality test. Crown Decl. Ex. 2 at 1–4.

On May 2nd, Plaintiff hired Mold Testing Services of Oregon (MTSO) to assess the apartment for mold growth. Wall Decl. Ex. 2 at 1, ECF 24. MTSO found "elevated levels of mold spores" in the air and mold growth in the attic, but no mold on Plaintiff's furniture. *Id.* The report concluded that "based on the air samples which indicate elevated levels of mold spores, professional cleaning of the contents [wa]s recommended." *Id.* at 6. The report also recommended that,"[b]ased on the lab results, the findings during the visual inspection, and the disruptive nature of the anticipated repairs," the unit should be vacated. *Id.*

In June, Defendants' employees examined the apartment and determined that Plaintiff's remaining belongings were worth less than $1000 total. Cunningham Decl. Ex. 8. On June 7th, Defendants posted an abandoned property notice to the apartment door. Cunningham Decl. Ex. 14 at 2. On June 8th, Plaintiff responded to the notice by emailing Defendants and requesting a "clearance report" before she removed her property. Cunningham Decl. Ex. 10. Plaintiff claims the moving company she hired, ServPro, required this report. Cunningham Decl. Ex. 1 ("Garren Dep.") at 114–15. Defendants did not provide Plaintiff with the requested report. Plaintiff then hired Mold Investigations to re-inspect the apartment, as well as her new apartment and the clothing and furniture she had brought with her. Cunningham Decl. Ex. 11.

On July 7th, Defendants emailed Plaintiff with a "courtesy notice" and warned that if her property was not retrieved the following Monday, July 10th, it would be destroyed. Garren Dep.

at 189. On July 10th, Mold Investigations reported finding no evidence of mold contamination in either apartment. Cunningham Decl. Ex. 11. On July 18th and July 19th, Plaintiff's attorney emailed Defendants and requested that movers be given access to the apartment in order to retrieve Plaintiff's remaining belongings. Garren Dep. at 183–87. Defendants did not respond to these emails. *Id.* at 186. On July 20th and 21st, Plaintiff saw, through a window, that her property was still in the apartment. *Id.* at 193. On July 22nd, Defendants advised, vial email, that they had disposed of the remaining property. *Id.* at 198. On July 25th, Plaintiff returned to the apartment and confirmed that all her belongings were gone. *Id.* at 192–93.

## STANDARDS

Summary judgment is appropriate when there is no genuine issue material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this initial burden, a moving party without the burden of proof at trial need only point to the absence of evidence supporting the nonmoving party's claim. *Id.* at 325. Once that initial burden is satisfied, the burden then shifts to the nonmoving party to demonstrate that there remains a genuine issue of material fact to be tried. *Id.* at 323. A nonmoving party with the burden of proof at trial must move beyond mere allegations and set forth affidavits, declarations, motions, or other evidentiary materials from the record to establish the essential elements of its claim. *Id.* at 324.

All reasonable doubts as to the existence of a genuine issue of material fact must be resolved in the nonmoving party's favor. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

Defendants move for partial summary judgment on two issues, arguing that (1) Plaintiff legally abandoned her property under O.R.S. 90.425, and (2) Plaintiff is not entitled to emotional distress damages based on the destruction of her personal property.

### I. Legally Abandoned Property

O.R.S. 90.425 dictates when and how landlords may sell or dispose of a former tenant's personal property when that property has been left on the premises. Before "storing, selling, or disposing of the tenant's personal property," a landlord must provide statutorily adequate notice. O.R.S. 90.425(3). Once a landlord provides this notice,

> if the tenant . . . does not respond within the time provided . . . [or] does not remove the personal property within the time required by subsection (8) of this section or by any date agreed to with the landlord, whichever is later, the tenant's . . . personal property is conclusively presumed to be abandoned. The tenant . . . shall . . . have no further right, title or interest to the personal property and may not claim or sell the property.

O.R.S. 90.425(9). O.R.S. 90.425(8) provides, in relevant part, that a tenant who responds to the landlord's notice, and indicates that she intends to remove the personal property, must remove that property within fifteen days.

Defendants argue that because they complied with the notice requirements of O.R.S. 90.425, and Plaintiff did not retrieve her belongings within the time required by O.R.S. 90.425(8), Plaintiff's "personal property is conclusively presumed to be abandoned" under O.R.S. 90.425(9). Thus, according to Defendants, because Plaintiff abandoned the property and therefore holds no further "right, title or interest" to it, Plaintiff is not entitled to relief based on the premature disposal of this property.

As an initial matter, O.R.S. 90.425 applies, in relevant part, when

(a) The tenancy has ended by termination or expiration of a rental agreement or by relinquishment or abandonment of the premises *and the landlord reasonably believes under all the circumstances that the tenant has left the personal property upon the premises with no intention of asserting any further claim to the premises or to the personal property*;

(b) The tenant has been absent from the premises continuously for seven days after termination of a tenancy by a court order that has not been executed; or

(c) The landlord receives possession of the premises from the sheriff following restitution pursuant to O.R.S. 105.161.

O.R.S. 90.425(2) (emphasis added).

Here, the parties agree that Plaintiff's tenancy ended by termination of a rental agreement. However, the parties disagree as to whether the statute requires that Defendants reasonably believed, under all the circumstances, that Plaintiff had left the personal property on the premises with no intention of asserting any further claim to the property before they could rely on the provisions of O.R.S. 90.425 to dispose of it. Plaintiff argues that this requirement ("and the landlord reasonably believes under all the circumstances. . . ") applies when a tenancy

has ended by termination. Defendants argue that the requirement applies only when a tenancy has ended by relinquishment or abandonment. Grammatically, both interpretations are permissible, and the Court has found no case law resolving the issue.

In the absence of clear precedent, the Court turns to the three-part statutory interpretation framework laid out by the Oregon Supreme Court in *State v. Gaines* to determine the intent of the legislature in drafting the statute at issue. 346 Or. 160, 165, (2009); O.R.S. 174.020. First, the Court examines the text and the context of the statute. *Gaines*, 346 Or. at 171 (citing *PGE v. Bureau of Labor and Indus.*, 317 Or. 606, 610–11 (1993)). In construing the text and context, the Court neither "insert[s] what has been omitted" nor "omit[s] what has been inserted." O.R.S. 174.010. Next, the parties are "free to proffer legislative history to the court, and the court will consult it after examining the text and context, even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis."[1] *Id.* at 172. Finally, "[i]f the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.*

The Court finds Plaintiff's interpretation to be both textually and contextually persuasive. First, nothing expressly ties the relevant clause ("and the landlord reasonably believes . . .") to "relinquishment or abandonment" but not "termination or expiration." The plain meaning of the text therefore suggests that, when a tenancy has ended by termination or expiration, a landlord must reasonably believe, under all the circumstances, that the tenant has abandoned the personal property before he can rely on the provisions of O.R.S. 90.425 to dispose of that property.

---

[1] The parties have not proffered any legislative history to the Court.

7 – OPINION & ORDER

Second, as explained by the Oregon Supreme Court, "text should not be read in isolation but must be considered in context." *Vsetecka v. Safeway Stores, Inc.*, 337 Or. 502, 508 (2004) (en banc) (quoting *Stevens v. Czerniak*, 336 Or. 392, 401 (2004)). "Context includes other provisions of the same statute." *Id.* Here, the statute identifies three alternative situations in which a landlord may rely on the provisions of O.R.S. 90.425. The first subsection groups tenancies that have ended by termination, expiration, relinquishment, or abandonment. It also adds a single qualifier. The second and third subsections reference tenancies that have ended by court order, and do not require any additional, objective belief as to whether a tenant intends to assert any future claim to the property. This make sense; where a tenancy has ended by court order, there is a definitive ruling on the parties' rights to the premises.

Defendants argue that, like a court order, "termination" and "expiration" also provide a definitive outline of the parties' rights; once a rental agreement has terminated or expired, the tenant has no further grounds to assert a claim to the premises. Defendants cite no law to support this contention. To the contrary, the parties' rights may, in fact, remain unclear following termination or expiration. For example, even after termination, a tenancy may be impliedly reinstated when a landlord accepts rent for a period beyond the termination date. *See* O.R.S. 90.414. Similarly, while a tenancy may end when a fixed-term agreement expires, it may also, in certain situations, simply roll into a month-to-month tenancy. *See, e.g.*, O.R.S. 90.427 ("if the specified ending date for the fixed term falls after the first year of occupancy, the fixed term tenancy becomes a month-to-month tenancy upon the expiration of the fixed term, . . .").

This does not mean that a landlord may never rely on the provisions of O.R.S. 90.425 when a tenancy has ended by termination or expiration. A landlord is not required to *know* that a tenant has no intent to assert any further claim to the premises or to the personal property at

issue—he must simply have a reasonable belief. If a landlord cannot support this reasonable belief, he may obtain a court order and proceed under the alternative subsections of O.R.S. 90.425(2). Thus, in sum, it is neither implausible nor irrational to require additional procedural safeguards in those situations when the end of the tenancy has not definitively ended by means of a court order.

Defendants urge the Court to rely on the "doctrine of the last antecedent," a rule of statutory construction. This rule provides that "referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent." *State v. Webb*, 324 Or. 380, 386 (1996) (citations omitted). However, this rule "is only a textual aid, and its application yields to more persuasive contextual evidence of the legislature's intent and to common sense." *Bridgeview Vineyards, Inc. v. State Land Bd. of State, Div. of State Lands of State*, 211 Or. App. 251, 270 (2007); *State v. Johnson*, 339 Or. 69, 93–94 (2005) (declining to apply doctrine where it would render a statute's meaning implausible "in the context of [Supreme Court] case law and the general assumption that statutes are rational.").

Moreover, Oregon courts have recognized a relevant exception to this doctrine: "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Price v. Lotlikar*, 285 Or. App. 692, 703 (2017) (quoting *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920) (finding that the clause "not domiciled in Port Rico" applied "to the entire phrase 'citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States not domiciled in Porto Rico.'"); *Brown v. City of Grants Pass*, 291 Or. App. 8, 13 n.3 (2018) (finding that "applying the rule of the last antecedent in the manner suggested by plaintiff, while grammatically plausible, would be

9 – OPINION & ORDER

contrary to" this exception). Here, the clause "and the landlord reasonably believes . . ." is equally applicable to the first and other words ("by termination or expiration of a rental agreement") as to the last ("or by relinquishment or abandonment of the premises"). Thus, given the statute's text and context, the Court finds that Defendants' proposed application of the rule of the last antecedent is not appropriate. In order to rely on the provisions of O.R.S. 90.425—specifically, O.R.S. 90.425(9)—Defendants must therefore show they had a reasonable belief, under all the circumstances, that Plaintiff did not intend to assert any further claim to her personal property.

There is a question of fact as to whether Defendants had a reasonable belief, under all the circumstances, that Plaintiff did not intend to assert any further claim to her personal property. Plaintiff expressly stated, via email, that she was "not abandoning her property." She also posted a notice to her door that again confirmed she was not abandoning this property. She then emailed a copy of this notice to the property manager. She frequently stopped by the apartment to check on her belongings. She asked Defendants for both an air quality report and, later, a clearance report. This clearance report, she contends, was required by the movers she hired to remove her belongings from the apartment. Defendants have identified no evidence to suggest they believed that Plaintiff intended to abandon her property. Thus, this Court cannot conclude that there is no question of fact as to whether Defendants were entitled to rely on the provisions of O.R.S. 90.425.

The Court therefore denies Defendants' motion for partial summary judgment dismissing Plaintiff's second and sixth claims to the extent they seek to recover for Defendants' premature disposal of Plaintiff's property. Similarly, because there is a question of fact as to whether

Plaintiff abandoned the property, the Court cannot dismiss Plaintiff's claims for trespass to chattel and conversion at this time.

## II. Emotional Distress Damages

Defendants also move for partial summary judgment on the issue of damages, arguing that Plaintiff cannot recover emotional distress damages related to her second and sixth claims for relief.

### a. Second Claim for Relief

Plaintiff's second claim for relief arises under O.R.S. 90.425. Under O.R.S. 90.425(17)(a), a tenant may recover "up to twice the actual damages sustained." The question here is therefore whether "actual" damages encompass emotional distress damages.

In *Brewer v. Erwin*,[2] the Oregon Supreme Court explained that "when other statutory indications are lacking, the key to damages seems to be to determine what kind of harm, in the setting of a normal residential rental transaction, can reasonably be said to lie within the contemplation of the protective provision of the act upon which the claim is founded." 287 Or. 435, 446 (1979). In the context of ORTLA's habitability provision, the court wrote that:

> We understand "actual damages" or "damages" to refer to compensation for tangible harm resulting from the statutory violation, though it need not be economic harm. The harm must be of a kind within the contemplation of the protective provision that was breached. It does not extend to the sort of annoyance, anger, or sense of frustration that frequently accompanies a dispute over a business transaction even when these common reactions are described as "emotional distress."
>
> On the other hand, such necessary recognition and acceptance of the risk of controversy need not preclude recovery of damages when tangible consequences such as physical illness, medical bills, inability to sleep, to eat or work in one's dwelling, separation of family members or similar disruptions of one's personal life result from the events or conditions that breach the standards of secure occupancy and essential services guaranteed by the act, rather than from the strain of preoccupation and vexation with the

---

[2] Defendants argue that *Brewer* is no longer good law. While *Brewer* was abrogated in part, it was not abrogated in relevant part.

11 – OPINION & ORDER

> dispute itself. If physical hardship and impairment can give rise to a claim for "actual damages" under the act, we see nothing to exclude such actual impairment because it is "psychological" or "emotional" rather than physical.

*Id.* at 448.

The court also noted that "it seems doubtful that the 'actual damages' recoverable for a landlord's negligent, deliberate, or malicious loss of a tenant's personal property under O.R.S. 91.840(4) would confine recovery for a lost collection of family photographs, a diary, or similar irreplaceable personal belongings to their market value." *Id.* at 446.

Here, Plaintiff appears to allege emotional distress stemming from "the strain of preoccupation and vexation with the dispute itself" as well as from the loss of irreplaceable personal belongings. For example, Plaintiff claims that compiling lists of her lost property was "emotionally draining" and "elicited anger, grief, and tears." Plaintiff also documented the loss of irreplaceable and emotionally significant belongings, such as her grandmother's gold necklace and her late-father's books.

Thus, following the *Brewer* reasoning, the Court finds that Plaintiff cannot recover emotional distress damages under ORTLA based on distress stemming from the dispute itself (e.g. "annoyance, anger, or sense of frustration"). Plaintiff can, however, recover emotional distress damages related to the loss of "irreplaceable personal belongings."

### b.  Sixth Claim for Relief

Plaintiff's sixth claim for relief asserts, in part, that Defendants negligently destroyed Plaintiff's personal property. Under Oregon law, emotional distress damages are generally not recoverable in a negligence action unless the plaintiff has suffered physical injury or some physical impact. *Curtis v. MRI Imaging Servs. II*, 148 Or. App. 607 (1997). One relevant exception arises "where the defendant's negligent conduct infringed on some legally protected

interest of the plaintiff apart from causing the claimed psychic injury." *Doyle v. City of Medford*, 356 Or. 336, 375 (2014) (citing *Nearing v. Weaver*, 295 Or. 702, 706 (1983) (recognizing that Oregon law allows recovery of damages for psychic harm when defendant's conduct infringes some legal right of plaintiff independent of an ordinary tort claim for negligence)); *McEvoy v. Helikson*, 277 Or. 781 (1977) (finding that defendant could recover mental distress damages based on the negligent delivery of a passport which resulted in the removal of plaintiff's child in violation of the terms of a divorce decree)).

"In the context of emotional distress, a legally protected interest is an independent basis of liability separate from the general duty to avoid foreseeable risk of harm." *Philibert v. Kluser*, 360 Or. 698, 704–05 (2016) (internal quotation marks and citations omitted). Such "legally protected interests" may arise from special relationships. *Id.* at 706 (quotations omitted). They may also arise from court orders, statutes, "constitutional provisions, regulations, local ordinances, and the historical and evolving common law." *Id.* For example, the Oregon Supreme Court has recognized a legally protected interest where a statute creates a legal duty "designed to protect plaintiff against the type of harm which occurred." *Id.* (quotations omitted).

However, "even if a plaintiff identifies a 'protected interest,' recovery for emotional distress damages is permitted only if the predicate legally protected interest is of sufficient importance as a matter of public policy to merit protections from emotional impact." *Tomlinson v. Metropolitan Pediatrics, LLC*, 275 Or. App. 658, 682 (2015) (citations and quotation marks omitted). "For example, where a defendant's negligence results in an underlying 'economic or property loss that predictably also results in emotional distress, the invasion is not of sufficient importance to warrant an award of damages for emotional distress.'" *Id.* (quoting *Shin v. Sunriver Preparatory School, Inc.*, 199 Or. App. 352, 371 (2005)).

At least one Oregon case has found that damage to personal property is not alone of sufficient importance to warrant emotional distress damages. In *Meyer v. 4-D Insulation Co., Inc.*, the court wrote that:

> It is difficult to imagine a circumstance in which damage to any property does not directly, naturally and predictably result in some emotional upset. Unless some other line is drawn, as we believe there must be as a policy matter, neither the quality of a defendant's conduct nor the predictability of distress as a result of property damage alone or together form a basis for an award of compensatory damages for emotional distress. Rather, it is the kind of interest invaded that, as a policy matter, is believed to be of sufficient importance to merit protection from emotional impact, that is critical. Regardless of the language used to describe when such damages are recoverable, the Oregon cases allowing such damages all involve an interference with the person beyond the inconvenience and distress always resulting from interference with property.

60 Or. App. 70, 74–75 (1982). Similarly, the court in *Hilt* found that where Plaintiff's underlying loss was solely economic, the "interest invaded" was not "of sufficient importance as a matter of policy to merit protection from emotional impact." *Hilt v. Bernstein*, 75 Or. App. 502, 515 (1985).

Thus, to the extent that Plaintiff's negligence claim is premised on the loss of the value of her personal property, Plaintiff cannot recover emotional distress damages.

## CONCLUSION

Defendants' motion for partial summary judgment [18] is DENIED in part and GRANTED in part. Accordingly,

(1) Plaintiff's second, third, fourth, and sixth claims for relief may proceed to trial;[3]

(2) Plaintiff cannot recover emotional distress damages under ORTLA based on distress stemming from the dispute itself (e.g. "annoyance, anger, or sense of frustration").

---

[3] Defendants did not challenge Plaintiffs' first and fifth claims for relief; these claims may therefore proceed to trial.

14 – OPINION & ORDER

Plaintiff can, however, recover emotional distress damages related to the loss of "irreplaceable personal belongings;" and

(3) Plaintiff cannot recover emotional distress damages related to her sixth claim for relief to the extent those damages are premised on the loss of the value of her personal property.

IT IS SO ORDERED.

Dated this \_\_6\_\_ day of \_\_Dec_____ 2019.

/s/ Marco Hernández
MARCO A. HERNÁNDEZ
United States District Judge